# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN D. ERASMUS,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLEN T. CHIEN, D.D.S, dba FRESNO ORAL MAXILLOFACIAL SURGERY & DENTAL IMPLANT CENTER, et al.,<br><br>    Defendants. | Case No.: 1:21-cv-1256 JLT SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 33) |

Megan Erasmus asserts the website of Fresno Oral Maxillofacial Surgery & Dental Implant Center failed to comply with accessibility requirements under the Americans with Disabilities Act and California law, because the video content lacked closed captioning. (*See generally* Doc. 32.) Defendants seek dismissal of the First Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting Erasmus lacks standing. In addition, Defendants contend any claim under the ADA is moot because all videos on the Center's website now contain closed captioning. (Doc. 33.)

The Court finds the matter is suitable for decision without oral arguments, and no hearing will be set pursuant to Local Rule 230(g). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**, and the First Amended Complaint is dismissed without leave to amend.

///

1

## I.      Background and Procedural History

Erasmus reports she "is completely deaf and relies entirely on closed captioning to consume audio content such as movies, videos or tutorials." (Doc. 32 at 2, ¶ 1.)  She asserts that "Fresno Oral Maxillofacial Surgery & Dental Implant Center provides goods and services out of a physical location in California," and its "services are open to the public, places of public accommodation, and business establishments." (*Id.* at 4, ¶ 12.)  Erasmus alleges the Center has a website with the root domain of https://fresnooralsurgery.com, which she visited in July 2021.  (*Id.* at 3, ¶¶ 4-5; *id.* at 4-5, ¶ 18.)

Erasmus contends the Center "offers videos on its website to induce customers to purchase its services." (Doc. 32 at 4, ¶ 14.)  According to Erasmus, "[w]ebsites and videos are some of the facilities, privileges, or advantages offered by Defendants to patrons of Fresno Oral Maxillofacial Surgery & Dental Implant Center." (*Id.*)  Erasmus alleges she "was a prospective customer interested in the types of goods and services that defendant offered at its brick and mortar location, including getting dental implants." (*Id.*, ¶ 15.)  She contends, "Before expending additional time and money to visit the defendant's physical store and to contract for goods or services at the defendant's physical store, [she] perused the advertising and information content provided by the defendant to customers and prospective customers via the … Website." (*Id.*, ¶ 16.)  However, Erasmus alleges she was "unable to fully understand and consume the contents of the videos" because the videos "lacked closed captioning." (*Id.* at 5, ¶ 19.)  For example, Erasmus asserts she "experienced difficulty and discomfort in attempting to view videos including: 'About Our Oral Surgery Practice| Fresno Oral Maxillofacial Surgery & Dental Implant Center.'" (*Id.*, ¶ 20.)

Erasmus asserts she made "multiple attempts to access the Website," and she "has been denied the full use and enjoyment of the facilities, goods and services offered by Defendants as a result of the accessibility barriers." (Doc. 32 at 5, ¶ 22.)  She contends, "[b]y failing to provide an accessible website, the Defendants denied [her] full and equal access to the facilities privileges or advantages offered to their customers." (*Id.*, ¶ 24.)  Erasmus alleges that "[i]f the Website had been constructed equally accessible to all individuals, [she] would have been able to navigate the website and avail herself of its services." (*Id.*, at 6, ¶ 28.)  Further, Erasmus asserts she was "deterred from returning to the website as a result of these prior experiences." (*Id.* at 5, ¶ 25.)  According to Erasmus, she "will

return to the Website to consider becoming a customer when it is represented to her that the Website are accessible." (*Id.* at 5-6, ¶ 27.)

Erasmus initiated this action by filing a complaint on August 19, 2021. (Doc. 1.) Defendants sought dismissal pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 14.) The Court granted the motion, finding the allegations were insufficient to support a conclusion that Erasmus had standing under Article III. (Doc. 31.) However, the Court granted leave to amend, indicating "[a]mendment would allow the Court to determine whether Erasmus suffered an injury-in-fact and may seek injunctive relief under the ADA." (*Id.* at 12.)

On February 10, 2023, Erasmus filed her First Amended Complaint against Allen T. Chien, D.D.S; Kheradpir DMD, MD Inc.; Shannon K. Barnhart, D.D.S Inc.; Brian Huh, DMD, Inc.; Thomas Curiel, DMD, Inc. — each doing business as Fresno Oral Maxillofacial Surgery & Dental Implant Center —seeking to hold the defendants liable for violations of the Americans with Disabilities Act and California law. (*See generally* Doc. 32.) Defendants filed the motion to dismiss now pending before the Court on February 24, 2023. (Doc. 14.) Erasmus filed a "Notice of Indication of Potential Mootness" on March 8, 2023, at which time counsel for Erasmus indicated she "personally visited the website and determined that the subject video now contains closed captions." (Doc. 34 at 2.) Erasmus filed an opposition to the motion to dismiss on March 10, 2023 (Doc. 36), to which Defendants filed a reply on March 17, 2023 (Doc. 37).

## II.     Motions to Dismiss under Rule 12(b)(1)

The district court is a court of limited jurisdiction, and is empowered only to hear disputes "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Federal courts are "presumed to lack jurisdiction in a particular case, unless the contrary affirmatively appears." *A-Z Int'l. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). Thus, a plaintiff carries the burden of demonstrating the Court has subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a

claim for relief for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)). Thus, "[a] jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). The Ninth Circuit explained:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). On a motion to dismiss under Rule 12(b)(1), the standards that must be applied by the Court vary according to the nature of the jurisdictional challenge.

If a defendant presents a *facial* challenge to the Court's jurisdiction, the Court must presume the truth of the Plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004). The Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). However, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. *Safe Air*, 373 F.3d at 1039.

On the other hand, if a defendant presents a *factual* challenge to the Court's jurisdiction, the Court "may review any evidence, such as affidavits and testimony." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Warren*, 328 F.3d at 1139. The Ninth Circuit explained: "Faced with a factual attack on subject matter jurisdiction, 'the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Thornhill Pub. Co.*, 594 F.2d at 734 (quoting

*Mortenson v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (1977)). If a moving party presents a factual attack motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see also Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000) (same). Thus, the burden of proof remains with a plaintiff, who has "an affirmative obligation to support jurisdictional allegations with proof." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

**III.     Discussion and Analysis**

Erasmus seeks to hold the defendants liable pursuant to Title III of the ADA and California's Unruh Civil Rights Act. (Doc. 32 at 7-9.) Defendants seek dismissal of the FAC on several grounds, arguing: (1) Erasmus fails to allege facts sufficient to establish a nexus between Defendants' website and physical office; (2) Erasmus lacks standing because she failed "to plausibly allege" the identified access barriers "caused her to be denied the full and equal enjoyment of goods and services at [the] brick-and-mortar clinic;" and (3) the claim under the ADA is moot because the alleged violations were remedied with closed captioning. (Doc. 33 at 2.)

Because Defendants present evidence in support of the motion—including a declaration from defendant Allen Chien—Defendants present a factual attack on the Court's jurisdiction. (*See* Doc. 33-2 at 1-2.) However, Defendants also raise arguments related to the sufficiency of the allegations in the Complaint. (Doc. 33-1 at 4-6.) Thus, Defendants raise both a factual attack and a facial attack under Rule 12(b)(1).

**A.     First Cause of Action: Violation of the ADA**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation, and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination by a "place of public accommodation" under the ADA includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated

differently than other individuals because of the absence of auxiliary aids and services," unless the entity shows such steps "would fundamentally alter" the nature of the goods, services, or privileges offered or "would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii).

To state a cognizable claim for a violation of Title III under the ADA, a plaintiff must allege: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to establish an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

### 1. Standing

Defendants contend Erasmus last standing because she "failed to allege an injury-in-fact under the ADA." (Doc. 33-1 at 6.) Because a plaintiff's standing is a "threshold question" in "determining the power of the court to entertain the suit," the Court addresses this argument first. *See Warth v. Seldon*, 422 U.S. 490, 498 (1975); *Stoianoff v. Montana*, 695 F.2d 1214, 1223-1224 (9th Cir. 1983) ("Standing of parties to bring their claims is a threshold question a court must face before reaching the substantive issues of a case"); *see also Langer v. HV Global Group, Inc.*, 2021 WL 4777092, at *2 (E.D. Cal. Oct. 12, 2021) (addressing the matter of standing for an ADA plaintiff first where the defendant challenged the complaint for both lack of standing and failure to state a claim).

To demonstrate standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (omitting internal citations). An injury is concrete and particularized when a plaintiff suffers discrimination due to barriers at a place public accommodation and those barriers have deterred the plaintiff from returning. *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008). A plaintiff suffers an "actual and imminent" injury under the ADA when she alleges "(1) that [s]he visited an accommodation in the past; (2) that [s]he was currently deterred from returning to the accommodation because of ADA

violations; and (3) that [s]he would return if the ADA violations were remedied." *Id.* (citing *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).

Furthermore, to establish standing for a claim of injunctive relief as Erasmus seeks here, she "must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman*, 631 F.3d at 946 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). The Ninth Circuit recognized a plaintiff seeking injunctive relief under the ADA can show a likelihood of future injury in one of two ways: (1) by showing she "intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier," or (2) by demonstrating "sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter [her] from returning to a noncompliant accommodation." *Id.* at 950.

The ADA identifies "an extensive list of 'public accommodations," which includes "a variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (citing 42 U.S.C. § 12181(7)). Reviewing the places identified by the statute, the Ninth Circuit determined the phrase "places of public accommodation" includes "actual, physical places where goods or services are open to the public." *Weyer*, 198 F.3d at 1114. In addition, "some connection between the good or service complained of and an actual physical place" may suffice for purposes of standing under the ADA. *Id*. As the Court observed: the ADA "applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (emphasis in original). When a plaintiff alleges "an ADA violation based on unequal access to a 'service' of a place of public accommodation, courts have held that a plaintiff must allege that there is a 'nexus' between the challenged service and the place of public accommodation." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 952 (N.D. Cal. 2006).

Following *Weyer*, courts throughout the Ninth Circuit determined that websites—which are clearly not physical places—are not "[o]n their own, … places of public accommodation." *Erasmus v. Ryan A. Dunlop, D.M.D., Inc.*, 2022 WL 2805961, at *5 (E.D. Cal. July 18, 2022); *see also, e.g., Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023-24 (N.D. Cal. 2012) ("The Netflix website is not 'an

7

actual physical place' and therefore, under Ninth Circuit law, is not a place of public accommodation"); *Gomez v. Gates Estates, Inc.*, 2022 WL 458465, at *4 (N.D. Cal. Feb. 15, 2022) (a website "is itself *not* a public accommodation within the meaning of the ADA" [emphasis in original]); *Langer v. Carvana*, 2021 WL 4439096, at *3 (C.D. Cal. Aug. 24, 2021) ("On their own, websites are not places of public accommodation" [citation omitted]); *Langer v. The American Automobile Assoc., Inc.*, 2022 WL 16838795, at *2 (S.D. Cal. Nov. 9, 2022) (same). However, because websites may be a service offered, "an ADA violation can arise out of the lack of accessibility of a website when there is a nexus between the website and the goods and services provided by a physical place of public accommodation." *AAA*, 2022 WL 16838795, at *2 (citing *Robles*, 913 at 905-06).

For example, in *Robles*, the Ninth Circuit considered the website and mobile application (app) of Domino's Pizza, which were not configured to allow use of screen-reading software to order pizza. *Id.*, 913 F.3d at 902. The plaintiff, Guillermo Robles, was a blind man who "accesses the internet using screen-reading software, which vocalizes visual information on websites." *Id.* Domino's website and app allowed "customers to order pizzas and other products for at-home delivery or in-store pickup, and receive exclusive discounts." *Id.* Robles asserted that on at least two occasions, he attempted to order with Domino's Pizza, but he was unable to do so because the website and app were not designed "so his software could read them." *Id.* The Ninth Circuit observed:

> The alleged inaccessibility of Domino's website and app impedes access to the goods and services of its physical pizza franchises—which are places of public accommodation. *See* 42 U.S.C. § 12181(7)(B) (listing a restaurant as a covered "public accommodation"). Customers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup. This nexus between Domino's website and app and physical restaurants—which Domino's does not contest—is critical to our analysis.

*Id.* at 905. The Court found it significant that "Domino's website and app facilitate access to the goods and services of a place of public accommodation—Domino's physical restaurants." *Id.* In addition, the Court noted the website and app were "two of the primary (and heavily advertised) means of ordering Domino's products to be picked up at or delivered from Domino's restaurants." *Id.* Because the website and app "connect customers to the goods and services of Domino's physical restaurants," the Court concluded the ADA applied to the company's website and app. *Id.* at 905-906. Given the

allegations before the Court, the Ninth Circuit indicated it "need not decide whether the ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location." *Id.* at 905 n.6.

Recently, this Court observed that "[d]espite the Ninth Circuit's silence on this issue, numerous California district courts have found no nexus where the complaint failed to plead that web-based barriers impeded the plaintiff from accessing or ordering goods or services from a physical location." *Dunlop*, 2022 WL 2805961, at *5 (considering whether there was a sufficient nexus between the website and physical location for the plaintiff to establish standing); *see also Langer v. AAA,* 2022 WL 16838795, at *3-4 (S.D. Cal. Nov. 9, 2022) (considering a motion under Rule 12(b)(6) and finding the plaintiff failed to state a claim where there was not a sufficient nexus alleged between the website and AAA's physical places); *Gomez v. Corro*, 2022 WL 1225258, at *2 (N.D. Cal. Apr. 26, 2022) (dismissing an ADA claim because the plaintiff did "not cite any authority within the Ninth Circuit holding that a plaintiff may bring a Title III ADA claim to challenge the inaccessibility of a website where the inability to access information on the website was the sole basis of the ADA claim — where the website information was the 'service' — and the website's inaccessibility did not separately impede access to the goods or services of the public accommodation"); *Langer v. Carvana*, 2021 WL 4439096, *3 (C.D. Cal. Aug. 24, 2021) (finding no nexus because plaintiff "has not pleaded that he was prevented from accessing any physical location or from ordering any products and/or services as a result of the alleged barriers on [defendant's] Website"); *HV Global Grp., Inc.*, 2021 WL 4777092, at *2 ("as a service, a website is not a place of public accommodation without some nexus to a physical location where goods and services are offered to the public," and finding the plaintiff failed to establish standing without such a nexus).[1]

Defendants contends that Erasmus "failed to allege an injury-in-fact under the ADA" because "the FAC fails to allege a nexus." (Doc. 33-1 at 6.) Erasmus argues "this argument is flawed for the

---

[1] In reviewing ADA cases, this Court previously acknowledged that "a minority of courts have held … ADA plaintiffs are not required to allege that the website prevented them from physically accessing the defendant's goods or services." *Dunlop*, 2022 WL 2805961, at *5. However, "the majority position among district courts in California" is clearly that a nexus is required for a plaintiff to establish standing or state a claim under the ADA." *Id.* Because the majority approach is "more consistent with *Robles*"—in which the Ninth Circuit indicated such a nexus was "critical to [its] analysis"—the Court follows the majority in requiring a plaintiff to plead a nexus between a website a physical office to establish standing. *See id.; see also Robles*, 913 F.3d at 905.

9

Plaintiff has alleged just that." (Doc. 36 at 5.) Specifically, Erasmus alleges in the FAC: "The Website is a nexus between Fresno Oral Maxillofacial Surgery & Dental Implant Center customers, and the terrestrial based privileges, goods or services offered by Fresno Oral Maxillofacial Surgery & Dental Implant Center." (Doc. 32 at 4, ¶ 13.) However, the statement that the website is a "nexus" is a legal conclusion. *See Langer v. Cooke City Raceway*, 2022 WL 2966172, at *9 (E.D. Cal. July 27, 2022) (finding the plaintiff offered "essentially only a legal conclusion" by stating the defendant's website "is a nexus between Cooke City Raceway, Inc. customers, and the terrestrial based privileges or services offered by Cooke City Raceway, Inc."). Rather, the Court must look at the allegations concerning the website and physical business to determine whether there is a nexus.

As the Court noted in addressing the initial complaint, nearly identical allegations were also raised in *Erasmus v. Ryan A. Dunlop, D.M.D., Inc. dba Better Life Center for Implant and General Dentistry*, 2022 WL 2805961 (E.D. Cal. July 18, 2022). In *Dunlop*, Erasmus alleged she visited the website in July 2021 "to learn more about their services." *Id.*, 2022 WL 2805961 at *6. Erasmus alleged she made "multiple attempts to access the Website," but the "video content on the Website lacked closed captioning which made her 'unable to fully understand and consume the video contents.'" *Id.* at **1, 6. Erasmus alleged she "experienced difficulty and discomfort in attempting to view the video 'Smile Restoration in Fresno' and, consequently, was deterred from further use of the website." *Id.* at *1 (internal quotation marks omitted). Erasmus asserted she would "return to the Website to avail herself of its goods and/or services and to determine compliance with the disability access laws once it is represented to her that [Defendant] and [the] Website are accessible." *Id.* The Court observed Erasmus did not allege she attempted "to order dental services from Defendant's physical office but was unable to do so." *Id.* at *6. In addition, Erasmus did not allege she "intended to visit Defendant's office and could not because the Website was inaccessible." *Id.* The Court concluded the allegations were insufficient to establish standing—or allege an injury under the ADA—because Erasmus did "not sufficiently allege a nexus between the Website and Defendant's physical office." *Id.* at *5. Therefore, the ADA claim was dismissed with leave to amend. *Id.* at *6.

The FAC now before the Court continues to suffer from the deficiencies identified with the initial complaint. As in *Dunlop*, Erasmus asserts she visited the website of the Center in July 2021 and

10

was "unable to fully understand and consume the contents of the videos" because the videos "lacked closed captioning." (Doc. 32 at 4-5, ¶¶ 18-19.) She asserts that "[i]f the Website had been constructed equally accessible to all individuals, [she] would have been able to navigate the website and avail herself of *its* services." (*Id.* at 6, ¶ 28, emphasis added.) She also alleges she "will return to the Website to consider becoming a customer when it is represented to her that the Website is accessible." (*Id.* at 32 at 5-6, ¶ 27.) Significantly, Erasmus does not allege the Center offered goods or dental services for purchase on its website. Erasmus also does not assert she was unable to visit the Center— or avail herself of the dental implant services offered at the center— as result of the lack of captioning on the website. Instead, Erasmus indicates she would return *to the website* and, at most, contends she was deterred from use of the website's services. Thus, Erasmus fails to connect the website to services offered at the Center's physical place. *Compare with Robles*, 913 F.3d at 905.

The allegations in the FAC fail to establish a sufficient nexus between the website and the Center. *See Dunlop*, 2022 WL 2805961 at *6; *see also Gates Estates, Inc.*, 2022 WL 458465, at *4 ("the ADA protects plaintiff's interest in using the website only if its inaccessibility impedes his access to the services of defendant's physical office"). Consequently, Erasmus did not meet her burden to allege facts sufficient to establish standing under the ADA. *See id; see also Miersch,* 2022 WL 1271009 at *2 (find a plaintiff lacked standing and was "far from pleading a 'nexus' between any purported website inaccessibility and a place of accommodation" where he did not plead "the website … prevented him from locating (and taking advantage of) a physical place of accommodation, even as the website provides this information to those who are not visually impaired").

### 2. Mootness

Because the Court finds the allegations are insufficient to support a conclusion that Erasmus has standing under Title III, the Court declines to address the remaining challenges to the claim under the ADA, including the evidence submitted by Defendants to demonstrate the alleged ADA claim is now moot because the videos contain closed captioning.[2]

---

[2] Nevertheless, the Court notes that Claudia Gavrilescu, who took over as counsel for Erasmus after her former attorney departed the firm, reports that she personally visited the Center's website while drafting the opposition to the pending motion and found "the subject video now contains closed captions." (Doc. 34 at 2.)

**B.     Second Cause of Action:  Violation of the Unruh Act**

Any violation of the ADA also is a violation of California's Unruh Civil Rights Act.  Cal. Civ. Code § 51(f); *see also Molski*, 481 F.3d at 731 ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act").  However, as discussed above, Erasmus fails to allege facts sufficient to challenge the facial attack by Defendants to support the conclusion that she has standing for a claim under the ADA.

In general, "when federal claims are dismissed before trial ... pendent state claims should also be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992).  Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)); *see also Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 664 (9th Cir. 2002) (when a court dismisses a federal claim for lack of standing, the court "ha[s] no discretion to retain supplemental jurisdiction over [the plaintiff's] state law claims"); *Strojnik v. Hotel Circle GL Holdings, LLC*, 2019 WL 6212084, at *6 (E.D. Cal. Nov. 21, 2019) (declining supplemental jurisdiction over the plaintiff's remaining state claims when his ADA claim failed for lack of standing).  Accordingly, the claim under the Unruh Act is dismissed without prejudice.

**IV.     Dismissal without Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted).  When dismissing a complaint, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Importantly, the Court previously granted Erasmus an opportunity to cure the pleading

deficiencies related to standing. (Doc. 31 at 12.) Erasmus failed to cure the identified deficiencies, and it does not appear there are any additional facts that she may plead to establish a nexus between the website and the Center's physical place of business. For these reasons, the Court finds further amendment is futile, and leave to amend will not be granted.

### V.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendants' motion to dismiss under Rule 12(b)(1) is **GRANTED**.
2. The First Amended Complaint (Doc. 32) is **DISMISSED** without leave to amend.
3. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

Dated:   **April 14, 2023**

_/s/ Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE

13